**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KG CARAVAN, INC., | ) |
|       *Plaintiff,* | ) ) ) |
| v. | ) ) Case No.: |
| AMERICAN INTER-FIDELITY EXCHANGE | ) ) ) ) ) |
|       *Defendants.* | ) |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff, KG CARAVAN, INC. ("KG"), by and through its attorneys Blitch Westley Barrette, S.C., and for its Complaint at Law against Defendant AMERICAN INTER-FIDELITY EXCHANGE ("AIFE"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, KG Caravan, Inc., is an Illinois corporation with its principal place of business at 100 Higgins Rd, Suite 208, Park Ridge, IL 60068. KG is therefore a citizen of the State of Illinois for purposes of 28 U.S.C. § 1332.

2. Defendant, American Inter-Fidelity Exchange, is an Indiana-domiciled insurance company with its principal business at 9223 Broadway, Suite A, Merrillville, IN 46410. AIFE is therefore a citizen of the State of Indiana for purposes of 28 U.S.C. § 1332.

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between Plaintiff KG Caravan, Inc. (Illinois) and Defendant AIFE (Indiana).

4. This Court has personal jurisdiction over Defendant because they purposefully directed their business activities toward KG Caravan, Inc., an Illinois company, by soliciting, underwriting, issuing, and administering the insurance policy at issue, and by conducting communications and business transactions with KG in the state of Illinois.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this dispute occurred in this District.

6. KG's principal place of business is located in Cook County, Illinois, which is within the Northern District of Illinois, Eastern Division.

## FACTUAL ALLEGATIONS

7. KG is, and at all relevant times was, a motor carrier of property, operating in interstate commerce under authority issued by the United States Department of Transportation.

8. Defendant AIFE is an insurance company that issues insurance policies to motor carriers, including policies covering legal liability for loss of or damage to cargo.

9. On or about November 14, 2023, KG submitted an application for cargo insurance coverage through Trinity's Underwriters Rater App under submission identification number 100043339. A true and correct copy of the Application is attached hereto as **Exhibit A**.

10. In its Application, KG disclosed and requested coverage for the following commodities: "AMAZON, BUILDING MATERIALS, GENERAL FREIGHT (LESS THAN 10%), METAL: SHEETS, COILS, ROLLS, OVERSIZED LOADS (NOT REQUIRING ESCORT), [and] PAPER."

11. After submission of the Application, Trinity, acting through its underwriting platform, procured Policy No. FPP16100-MTC-80765-WCII (the "Sierra Policy") for KG. A true and correct copy of the Sierra Policy is attached hereto as **Exhibit B**.

12. The Sierra Policy was issued by Sierra Specialty Insurance Company for the policy period beginning November 15, 2023, and ending November 15, 2024. The Sierra Policy provided motor truck cargo liability coverage with a $250,000 limit and $1,000 deductible, insuring KG against its legal liability as a motor carrier for loss of or damage to cargo in the ordinary course of interstate transportation.

13. On or about June 18, 2024, KG sustained a covered cargo loss while transporting a full aircraft under a load tendered by Total Quality Logistics ("TQL").

14. KG promptly reported the loss and submitted a cargo claim ("Cargo Claim"), believing that the claim was being submitted under the Sierra Policy through Trinity. A true and correct copy of the Cargo Claim is attached hereto as **Exhibit C**.

15. Upon information and belief, unbeknownst to KG at the time, Sierra Specialty Insurance Company discontinued operations.

16. To prevent a lapse in coverage, and at the request of Trinity and the Continental Trucking Association, AIFE issued a replacement policy, bearing Policy No. I24M8975 (the "AIFE Policy"), for the period beginning February 1, 2024, and ending July 1, 2024. A true and correct copy of the Certification of Policy is attached hereto as **Exhibit D.**

17. The Certification of Policy confirms that AIFE issued Policy No. I24M8975 to the Continental Trucking Association Group/Sierra, and that the policy was in full force and effect as of April 1, 2024

18. KG submitted its Cargo Claim to Trinity under the Sierra Policy, and on September 6, 2024, received a Claim Acknowledgment Form that expressly referenced Policy No. FPP16100-MTC-80765-WCII.

3

19. KG was never provided with a copy of the AIFE Policy during the policy period and was not aware of its issuance until AIFE later denied coverage for KG's claim.

20. It is unclear who, if anyone, signed or otherwise authorized the AIFE Policy to be bound, but KG never received a copy of the AIFE Policy, and KG did not even know that AIFE had even issued KG a Policy.

21. On January 31, 2025, AIFE sent a declination of coverage letter directly to KG regarding Claim No. F242535.

22. In its January 31, 2025, letter, AIFE denied coverage on the grounds that: (a) no "specified peril" under the Policy caused the loss; and (b) the aircraft was classified as an "oversized load" requiring prior company approval.

23. KG disclosed that it transported oversized loads in its regular course of business, in its November 14, 2023, Application (Exhibit A), which was the basis for the Sierra Policy issued to KG.

24. On May 30, 2025, after KG engaged counsel, AIFE issued a further letter restating its denial of coverage.

25. In its May 30, 2025, letter, AIFE stated that the commodity exclusion list under the AIFE Policy "did not vary from the Sierra policy," and that the AIFE Policy was adjusted to provide the "same commodity coverage" as the Sierra Policy.

26. The Sierra Policy "Evidence of Insurance" (Exhibit B) expressly listed "OVERSIZED LOADS (NOT REQUIRING ESCORT)" as a covered commodity.

27. Despite this representation, AIFE denied KG's claim, referring to the following exclusion:

4

\*\*\*

"5. Oversized loads without prior approval by the company or an authorized representative"

28. In its January 31, 2025, declination letter, AIFE further stated: *"American Inter-Fidelity neither received a request to approve this move nor was authorization provided."*

29. The AIFE Policy and Sierra Policy each contained the exclusion for "Oversized Loads without prior approval by the company or authorized representative." However, KG had disclosed oversized loads as a commodity it hauled in its Application, and it was approved.

30. The term *"company"* is not defined anywhere in the AIFE Policy, creating an ambiguity as to the scope and effect of the oversized-load exclusion.

31. Because KG specifically listed "Oversized Loads (Not Requiring Escort)" as a covered commodity in its Application, and the Sierra Policy certificate reflected coverage for that commodity, the exclusion is reasonably interpreted to allow KG itself to approve oversized loads.

32. As a direct result of AIFE's declination of coverage, KG has not been indemnified for its cargo loss. KG has sustained damages in excess of $75,000, including the value of the lost cargo, costs associated with defending claims from third parties, and related business expenses.

## COUNT I – BREACH OF CONTRACT (AIFE)

33. Plaintiff realleges and incorporates by reference Paragraphs 1–32 as though fully set forth herein.

34. The AIFE Policy, bearing Policy No. I24M8975 was issued for the benefit of KG and was intended to provide coverage equivalent to the Sierra Policy.

35. KG paid all premiums due under the AIFE Policy and fully performed all of its obligations thereunder.

36. In return, KG reasonably expected to receive cargo liability coverage consistent with its Application and the Policy, including coverage for oversized loads disclosed in that Application and reflected on the Sierra Policy "Evidence of Insurance".

37. KG disclosed in its Application that it hauls oversized loads, and the Sierra Policy certificate expressly listed "Oversized Loads (Not Requiring Escort)" as a covered commodity. KG had every right to expect that the replacement AIFE Policy would provide the same coverage.

38. AIFE breached its contractual obligations by denying KG's cargo claim.

39. The oversized-load exclusion referenced "prior approval by the company or authorized representative." Under the AIFE Policy definitions, "we," "us," and "our" mean the insurer, while "you" and "your" mean the insured, KG. The Policy does not define "company."

40. Moreover, AIFE never provided KG with any information, instructions, or point of contact for obtaining such "prior approval," nor did it identify any procedure, department, or representative through whom authorization could be requested. The absence of any such guidance further demonstrates that the term "company" could not reasonably have been intended to mean AIFE.

41. As a direct and proximate result of AIFE's breach, KG has suffered damages in the amount of $126,530.00, representing the unpaid cargo claim withheld by Total Quality Logistics, together with additional consequential damages, including defense costs and related business expenses.

**WHEREFORE**, Plaintiff KG Caravan, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant American Inter-Fidelity Exchange for damages in an amount not less than $126,530.00, plus consequential damages including defense costs, loss of

business opportunities, and related business expenses, together with pre- and post-judgment interest as permitted by law, and for such other relief as this Court deems just and proper.

## COUNT II – DECLARATORY JUDGMENT (AGAINST AIFE)

42. Plaintiff realleges and incorporates by reference Paragraphs 1–41 as though fully set forth herein.

43. An actual and justiciable controversy exists between KG and AIFE regarding AIFE's obligations under Policy No. I24M8975 with respect to KG's cargo claim.

44. KG disclosed oversized loads in its Application, and the Sierra Policy certificate expressly listed "Oversized Loads (Not Requiring Escort)" as a covered commodity.

45. AIFE represented in its May 30, 2025, letter that the AIFE Policy "did not vary from the Sierra policy." Yet, AIFE denied KG's claim based on the oversized-load exclusion, relying on an undefined "company approval" requirement.

46. The term "company" is not defined anywhere in the AIFE Policy. The only defined terms are "we," "us," and "our," which refer to AIFE. The oversized-load exclusion, therefore, contains an ambiguity as to who, if anyone, was authorized to approve such loads.

47. Coverage exists under the AIFE Policy for the $126,530.00 cargo loss, and the oversized-load exclusion does not preclude coverage or, at best, is ambiguous, and must be construed to provide coverage to KG's claim.

48. A dispute now exists between KG and AIFE as to whether the loss is covered under the Policy.

**WHEREFORE**, Plaintiff, KG Caravan, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant American Inter-Fidelity Exchange, and declare the rights and obligations of the parties under Policy No. I24M8975, including finding that

coverage exists for Plaintiff's cargo loss in the amount of at least $126,530.00, or grant such other and further relief as this Court deems just and proper.

Dated: February 3, 2026

Respectfully submitted,
KG CARAVAN, INC.

By: */s/ Matthew P. Barrette*
One of Its Attorneys

Matthew P. Barrette
BLITCH WESTLEY BARRETTE, S.C.
1500 Spring Road, Suite 120
Oak Brook, Illinois 60523
Tel: (312) 283-4220
mbarrette@bwesq.com
IL ARDC# 6274523